**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 3:11-CR-85** |
| | ) | **(Phillips)** |
| **ANTHONY HAYNES** | ) | |

## MEMORANDUM AND ORDER

On August 30, 2011, defendant Anthony Haynes entered a plea of guilty to possession and distribution of child pornography.  Before sentencing, the Government submitted a restitution request from an attorney representing the victim whose images were depicted in the "Vicky" series, which was included in the child pornography collection found on the defendant's computer.  In support of the request for restitution, the Government provided the parties, the Probation Office, and the court, written documents detailing the losses that it asserted were subject to restitution under 18 U.S.C. §2259.  Among those documents was a letter dated December 22, 2011, from an attorney requesting that defendant be made to pay restitution to the crime's "victim," identified as "Vicky," in the amount of $757,706.58.

The letter from Vicky's representative attached several exhibits in support of her request.  Among those were the following documents: (1) Psychological Status Report from Randall L. Green, Ph.D.; (2) Victim Impact Statement verified by Vicky on March 5,

2012; (3) Declaration of Victim's Counsel in Support of Restitution verified by Carol L. Hepburn on February 10, 2012; (4) Statements of Mother and Step-father as to impact; (5) Vocational Assessment; and (6) forensic economic analysis of lost wages. These materials claim that, as a result of her abuse and the subsequent distribution of her images, Vicky has suffered profound psychological harm and distress.

Defendant submits that there is no evidence showing a specific loss that was proximately caused by his possession of the victim's images or that he distributed the images of Vicky. The losses described by the victim are generalized and caused by the "idea" of her images being publicly viewed rather than caused by defendant's having viewed her images. Defendant asserts that the fact that he possessed and viewed the images of the victim is insufficient to prove that Vicky suffered any additional loss above and beyond what she has already experienced at the hands of her father, who produced the pornographic images and disseminated the images on the internet.

Section 2259 of Title 18, United States Code, defines the individual harmed "as a result" of a defendant's crime committed under Chapter 110 of the United States Code as the crime's "Victim." 18 U.S.C. §2259(c). Section 2259 further mandates the court issue an order directing the defendant to pay that victim restitution equaling "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Section 2259 defines "the full amount of the victim's losses" as "any costs incurred by the victim" for the following:

(A) medical services relating to physical, psychiatric or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorney's fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).


After review of the materials submitted, the court finds that Vicky was a "victim" of defendant's crime within the meaning of 18 U.S.C. §2259(c). This is because Vicky was "harmed," under 18 U.S.C. § 2259(c), "as a result of" defendant's receipt and/or possession of images of her sexual abuse as a minor over the Internet. The court makes this finding because the Government has proved, by a preponderance of the evidence, that (1) on August 18, 2010, the defendant knowingly distributed images of Vicky; (2) on December 15, 2010, defendant knowingly possessed material that contained images of Vicky; and (3) Vicky has sustained, and continues to sustain, significant psychological damage as a result of her knowledge that unidentified individuals have downloaded pornographic images of her from the Internet on unidentified occasions, included, but not limited to, August 18, 2010, and December 15, 2010.

The court makes this finding for the reasons stated by the Eleventh Circuit in *United States v. McDaniel*, a case involving the same victim as involved in the instant case:

> Like the producers and distributors of child pornography, the possessors of child pornography victimize the children depicted within. The end users of child pornography enable and support the continued production of child pornography. They provide the economic incentive for the creation and distribution of the pornography, and the end users violate the child's privacy by possessing their image. All of these harms stem directly from an individual's possession of child abuse images.

*McDaniel*, 631 F.3d 1204, 1208 (11th Cir. 2011). In addition, as the Fifth Circuit has previously explained in *United States v. Norris*:

> The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways.
>
> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation . . . . The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.
>
> Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent . . . . The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

> Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials . . . . Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing . . . between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

*Norris,* 159 F.3d 926, 929-30 (5th Cir. 1998). The United States Supreme Court has recognized that the distribution of child pornography is "intrinsically related to the sexual abuse of children" because "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982). More specifically, the Supreme Court has recognized that "because the child's actions are reduced to a recording, the pornography may haunt [the child] in future years, long after the original misdeed took place." *Id.* at 759 n. 10.

Next, the court finds that the defendant's crime was a proximate cause of Vicky's losses. The Government has proved, by a preponderance of the evidence, that (1) defendant received pornographic images of Vicky from the Internet, (2) he possessed such pornographic images of Vicky, and (3) Vicky has sustained, and continues to sustain, significant psychological damage as a result of her knowledge that unidentified individuals

have downloaded pornographic images of her from the Internet on unidentified occasions in 2010. Further, the court finds that it was reasonably foreseeable to users of child pornography, like the defendant, that Vicky would sustain the losses described below by knowing that unidentified individuals, like defendant, were downloading those pornographic images of her from the Internet on unidentified occasions in 2010. Moreover, there was a direct causal connection between defendant's downloading pornographic images of Vicky from the Internet in 2010 and the losses described below stemming from her knowledge that unidentified individuals were downloading those pornographic images of her from the Internet on unidentified occasions in 2010. Finally, the losses described below fall within the potential harms that made defendant's conduct criminal – invading Vicky's privacy, and re-traumatizing her, by downloading pornographic images of her from the Internet.

The Government provided the following evidence: (1) a Victim Impact Statement by Vicky's mother stating that her daughter knows, and is traumatized by the knowledge, that people still download her images everyday; (2) a Victim Impact Statement by Vicky's step-father stating that Vicky experiences constant reminders that people are still downloading her images; (3) a Victim Impact Statement by Vicky stating that she lives everyday with the knowledge that "someone somewhere" is downloading her images; and (4) a Forensic Psychological Evaluation of Vicky stating that she knows that people are still downloading her images. The court finds that the Government has established that Vicky has been harmed by the dissemination of her images on the Internet. The court is sympathetic to the victims of child pornography, recognizing the harm they have suffered

and will continue to suffer throughout their adult lives.  Therefore, in accordance with §

2259, an award of restitution to the victim is mandatory.  *See* 18 U.S.C. § 2259(b)(4) ("The

issuance of a restitution order under this section is mandatory").

Title 18 U.S.C. § 2259 mandates that the court award restitution to victims in

"the full amount of the victim's losses" and specifically forbids the court from declining to

issue an order under this section because of (1) the economic circumstances of the

defendant, or (2) the fact that a victim has, or is entitled to, receive compensation for her

injuries from the proceeds of insurance or any other source.  However, the statute also

directs the court to award restitution "as determined by the court . . . in accordance with

Section 3664 in the same manner as an order under Section 3663A."  18 U.S.C. § 2259.

The Government requests restitution in the amount of $757.706.58 which

includes $106,900.00 in future counseling expenses; $147,830.00 in educational and

vocational counseling needs; $722,511.00 in lost earnings; $46,170.52 in expenses paid

in out-of-pocket costs for the forensic evaluations, supporting records and travel by her

representative to meet with Vicky; and $297,815.00 in attorneys fees for a gross amount

of $1,321,226.52.  Vicky's representative states that Vicky has received to date

$563,519.94 in restitution payments.  Thus, the net amount of economic losses deserving

of restitution is $757,706.58.  Based on the evidence provided to the court, the court finds

that the Government has established, by a preponderance of the evidence, that the request

for future economic losses in the amount of $757,706.58 is reasonable.

As stated above, the court finds that *all* of the losses were caused by individuals by downloading pornographic images of Vicky on the Internet. The court acknowledges that individuals other than defendant have been convicted of downloading those pornographic images of Vicky on the Internet, each contributing to her losses. This fact does not preclude a finding that defendant is liable for the losses cause by other individuals, because 18 U.S.C. § 3664 permits the court to impose the restitution award jointly and severally. *See* 18 U.S.C. §3664(h) ("If the court finds that more than one defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant").

Further, after carefully considering the issue, the court finds that, under the circumstances, it is appropriate to hold defendant liable for payment of the *full* amount of restitution for four reasons. First, given the likely decrease in each new defendant's relative share of responsibility, and the fact that a certain number of those defendants are likely without sufficient funds, it is only through joint and several liability that Vicky can be made economically whole. Second, any perceived unfairness to defendant is minimized, or eliminated, by the fact that the court will qualify its order so that defendant need pay Vicky only the amount not already paid by other individuals for the referenced loss. The court notes that other courts have found a similar qualification sufficient to minimize or eliminate any perceived unfairness to a defendant. *See, e.g., In re Amy Unknown*, 636 F.3d 190,

201 (5th Cir. 2011); *United States v. Staples*, 09-CR-14017, Transcript of Restitution Heart, at 7-8 (S.D.Fla. Aug, 12, 2009); *United States v. Hoffman*, 08-CR-27, Transcript of Sentencing Proceedings, at 14-16 (D.Nev. July 30, 2010); *United States v. Rosenberg*, 08-CR-756, Transcript of Sentencing Proceeding, at 15-16 (N.D.N.Y. Mar. 30. 2010); *United States v. Burgess*, 08-CR-17, Judgment, at 8 (W.D.N.C. Aug. 27, 2010).

Third, any confusion about who is responsible for ensuring that Vicky does not receive a double recovery during the enforcement and/or collection of a judgment against defendant is minimized, or eliminated, by the fact that the court hereby **DIRECTS** that the Government, the United States Probation Office, and Vicky's representative shall fulfill that duty, which includes the duty to "track payments that involve defendants in numerous jurisdictions across the country." *See United States v. Aims*, 656 F.3d 147, 156 (2nd Cir. 2011). The court is confident that Vicky's representative and the Government possess the resources to determine what amount Vicky has received by collecting data from the cases ascertaining what money has actually been paid and determining what losses that money is intended to cover. The court notes that other courts have so relied on the Government. *See, e.g., United States v. Hoffman*, 08-CR-27, Transcript of Sentencing Proceedings, at 15-16 (D.Nev. July 30, 2010); *United States v. Rosenberg*, 08-CR-756, Transcript of Sentencing Proceeding, at 15-16 (N.D.N.Y. Mar. 30. 2010).

Fourth, any Eighth Amendment concerns are ameliorated by the following facts: (1) the statute in question is properly considered as remedial, not punitive, in nature;

and (2) in any event, while the imposition of full restitution (pursuant to joint and several liability) may sometimes appear harsh, it is neither grossly disproportionate to the very serious crime of receiving and possessing child pornography, nor unusual in the constitutional sense.

Accordingly, it is **ORDERED** that defendant is jointly and severally liable to Vicky for $757,706.58, and must pay to Vicky however much of this amount that she has not already been paid for future economic losses; and

**IT IS FURTHER ORDERED** that the Government, the United States Probation Office, and Vicky's representative shall ensure that Vicky does not receive a double recovery during the enforcement and/or collection of a judgment against defendant.

**ENTER:**

_____ s/ Thomas W. Phillips _____
United States District Judge